IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES RODNEY PARKE,** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 11-00639-KD-M** |
| | ) | |
| **ED GLOVER,** *et al.*, | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the Plaintiffs' "Motion for Attorney Fees and Costs" (Doc. 66).   Though given an opportunity to respond (Doc. 62), the Defendants have not done so.

**I.      Background**

On November 14, 2011, Plaintiffs Charles Parke, Parke Properties, LLC, and Land Investments Properties, Inc. ("Plaintiffs") commenced this action, alleging claims for breach of three promissory notes by Defendants Ed Glover and Valley Creek Land Company of York, LLC ("Defendants") and requesting costs and attorney's fees in addition to other damages.   (Doc. 1).  Defendants countered, among other defenses/counterclaims, that they owed no further payments on the promissory notes because Plaintiffs first committed a material breach of the settlement agreement between the parties giving rise to the notes by intentionally interfering with Defendants' business activities.   (Doc. 3 at 7).

After Plaintiffs' motion for summary judgment was denied (Doc. 39), this action proceeded to a trial by jury beginning January 3, 2013.   The jury returned a verdict in favor of the Plaintiffs on their breach of contract claims and awarded damages of $309,000.   (Doc. 63).   At trial, the three promissory notes at issue were admitted into evidence.   Each note is signed by Defendants and contains the following provision: "The makers, endorsers, sureties, and guarantors agree to pay all costs of collecting or securing, or attempting to collect or secure, this note, whether by suit or otherwise, including a reasonable attorney's fee to the extent permitted by law."   (Plaintiffs' Trial

Exs. 1-3).   The parties agreed at trial to allow the Court to determine a reasonable attorney's fee pursuant to these provisions.

## II.   Attorney's Fees & Expenses

Under Alabama law, it is well settled that contractual provisions relating to the payment of attorneys' fees are enforceable.[1]   See, e.g., Subway Rests., Inc. v. Madison Square Assoc., Ltd., 613 So. 2d 1255, 1257 (Ala. 1993) (holding that "[i]n Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of the action...when provided in a contract"); Knight v. Hired Hand Green, Inc., 775 So. 2d 218, 222 (Ala. Civ. App. 1999) (finding the plaintiff "was necessarily entitled to...attorney fee for collection…pursuant to the clear terms of the contract"); Smith v. Combustion Res. Eng'g, Inc., 431 So. 2d 1249, 1252 (Ala. 1983); Lewis v. Haleyville Mobile Home Supply, Inc., 447 So. 2d 691, 692-93 (Ala. 1984); Chilton Warehouse & Mfg. Co. v. Lewis, 57 So. 100, 101 (Ala. App. 1911).   Therefore, the Court finds that Plaintiffs are entitled to attorney's fees and expenses related to litigating their claims against and the counterclaims of Defendants in this matter, in accordance with the terms of the promissory notes.

In support of the request for attorney's fees and expenses, Plaintiffs submit the affidavits of two practicing Alabama attorneys, Angie Ingram ("Ingram") and Ham Wilson ("Wilson") (Doc. 66-1), and an itemization of expenses incurred and of time expended by Tom Buck ("Buck"), Plaintiffs' counsel, in providing services in this action (Doc. 66 at 4-10).   Plaintiffs seek attorney's fees in the amount of $100,000 (approximately one-third of the verdict amount), claiming that they

---

[1] The Court has jurisdiction over this action pursuant to diversity under 28 U.S.C. § 1332.   "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . The doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction."   Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004) (citing Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991)) (internal quotations omitted).   Though none of the notes contains a choice-of-law provision, the parties have agreed that Alabama law governs the notes.

were represented in this action on a contingency basis, or, in the alternative, an amount the Court

deems appropriate based on Buck's time and expense itemization and a billing rate of $300/hour.

Defendants have not challenged Plaintiffs' right to recover their attorneys' fees and

expenses.   However, under the terms of the promissory notes, Plaintiffs may recover only those

fees and expenses that are "reasonable."   (Plaintiffs' Trial Exs. 1-3).   Accordingly, before

fashioning any award, the Court must first assess the reasonableness of Plaintiffs' request.

    a.    **Applicable Standards**

When awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the

money of others, and it is as much the duty of courts to see that excessive fees and expenses are not

awarded as it is to see that an adequate amount is awarded."   Am. Civil Liberties Union of Ga. v.

Barnes, 168 F.3d 423, 428 (11th Cir. 1999).   In this Circuit, courts generally apply the "lodestar"

method -- multiplying the hours reasonably expended by a reasonable hourly rate -- to make such an

assessment.   Norman v. Hous. Auth., 836 F.2d 1292, 1299 (11th Cir. 1988).   The 12 factors

identified by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.

1974), may aid the Court in determining a reasonable hourly rate and thereby affect the lodestar

analysis.   Norman, 836 F.2d at 1299.   Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the
> skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee; (6)
> whether the fee is fixed or contingent; (7) time limitations imposed by the client or
> the circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the
> case; (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

Ass'n of Disabled Ams. v. Neptune Designs, Inc., 469 F.3d 1357, 1359 n.1 (11th Cir. 2006) (citing

Johnson, 488 F.2d at 717-19).   Additionally, whereas this action is before the Court on the basis of

diversity jurisdiction, and because the parties have agreed that the promissory notes will be

3

interpreted under Alabama law, any fee award must be consonant with Alabama law. Under

Alabama law, the factors to be considered include:

> (1) the nature and value of the subject matter of the employment; (2) the learning,
> skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the
> professional experience and reputation of the attorney; (5) the weight of his
> responsibilities; (6) the measure of success achieved; (7) the reasonable expenses
> incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a
> professional relationship; (10) the fee customarily charged in the locality for similar
> legal services; (11) the likelihood that a particular employment may preclude other
> employment; and (12) the time limitations imposed by the client or by the
> circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala. 1988) (citing Peebles v. Miley,

439 So. 2d 137 (Ala. 1983)).   Not all of these criteria must be met or brought into play.   Graddick

v. First Farmers & Merchants Nat'l Bank of Troy, 453 So. 2d 1305, 1311 (Ala. 1984).

### b.   Contingency Fee Agreement

As an initial matter, Plaintiffs have not submitted a copy of the contingency fee agreement

between them and their counsel.   The only evidence of such an agreement is found in the affidavits

of the two attorneys, which both state that Plaintiffs' counsel's litigation file includes "the type of

contract with the plaintiff as being a contingent fee contract or the amount of the attorney fee

awarded by the court, whichever is less."   (Doc. 66-1).   Ingram's affidavit states that $100,000

"represents a one-third contingency," while Wilson's affidavit states that $100,000 constitutes a

"33% contingency[.]"   (Id.).

"The rights and obligations of parties to a contract, which provides attorneys' fees upon the

happening of a contingency, are governed by state law."   Zaklama v. Mount Sinai Med. Ctr., 906

F.2d 650, 652 (11th Cir. 1990) (citation omitted).   Rule 1.5(c) of the Alabama Rules of

Professional Conduct states in part: "A contingent fee agreement shall be in writing and shall state

the method by which the fee is to be determined, including the percentage or percentages that shall

accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be

4

deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated."   However, while the Court could find no Alabama case directly addressing whether a contingency fee agreement is enforceable if not in writing,[2] the Alabama Supreme Court has held that a violation of Rule 1.5(e) of the Alabama Rules of Professional Conduct (which addresses division of fees between lawyers who are not in the same firm) does not render a fee-splitting agreement unenforceable.   See Poole v. Prince, 61 So. 3d 258, 281-82 (Ala. 2010) ("The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.   The courts will not declare an agreement void on the ground of public policy unless it clearly appears to be in violation of the public policy of the state . . . . We conclude that the trial court erred to the extent that it determined the parties' agreement to be unenforceable as violative of Rule 1.5(e), Ala. R. Prof. Cond. As discussed in the Scope of the Alabama Rules of Professional Conduct and in the above-cited authorities, the sole remedy for a violation of Rule 1.5(e) is disciplinary in nature; therefore, the trial court lacked the authority to declare the parties' agreement unenforceable as violative of Rule 1.5(e)." (internal quotations omitted)).   Extending this rationale to Rule 1.5(c), and considering the fact that Defendants have made no objection, the Court finds that Plaintiffs have presented adequate evidence of a one-third contingency fee agreement such that the Court may consider it in determining an award of attorney's fees.

c.     **Reasonable Fees & Expenses**

As the parties requesting fees, Plaintiffs " 'bear[] the burden of establishing entitlement and documenting the appropriate hours and hourly rates.' "   Barnes, 168 F.3d at 427 (quoting Norman,

---

[2]  The issue was sidestepped in Smelser v. Trent, 698 So. 2d 1094, 1095 n.1 (Ala. 1997) ("Although the contingent fee arrangement in this case was not reduced to writing, as required by Rule 1.5(c), Alabama Rules of Professional Conduct, White confirmed it in writing. Further, White never disputed that she did, in fact, agree to the one-third contingent fee. Because the appellants do not question whether the absence of a writing invalidated the contingent fee

836 F.2d at 1303).   The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."   Norman, 836 F.2d at 1299.   In this case, the relevant legal community is Mobile, Alabama.   See Barnes, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed" – in that case, Atlanta) (citation omitted)).

Essentially, this action is a collection lawsuit.   The Alabama Supreme Court has recognized that "the great majority of the collections done in this state are done on a contingent percentage fee basis."   Peebles v. Miley, 439 So. 2d 137, 142 (Ala. 1983).   In Peebles, the court held that a defendant in a collection case could be made to pay the amount of a contingency fee as attorneys' fee damages pursuant to the terms of a contract, so long as the contingency fee is otherwise reasonable:

> Counsel for the defendants make much of the argument that defendants, in signing the note, did not sign to pay a contingent percentage fee, but signed to pay a reasonable attorney's fee. We agree, but under the circumstances, these words may be synonymous. No one could seriously argue that after default, the debtor should have the right to choose the attorney that best suits his or her predilection. It is natural to believe that a creditor, if he or she can, would prefer, in collecting on a promissory note, to obtain a lawyer who would agree to obtain the fee for collection from the debtor, and if he could not obtain it from the debtor, would make no charge to the creditor. Plaintiff was able to find such an attorney, and, therefore, the charges made by such attorney based on such a contingent percentage arrangement, if reasonable in all other aspects, must be reasonable. Otherwise, we would have the hapless circumstance of the defaulting debtor's dictating to the creditor the attorney that the creditor should choose.
>
> Our cases recognize that an attorney on a contingent fee basis is entitled to charge more than an attorney who is guaranteed compensation by periodic billings. The common sense of this is exemplified in the adage "A bird in the hand is worth two in the bush." If someone is willing to take the great risk of giving up the sure quantity for the uncertain, and wins, then the uncertain prize should be worth more than the certain one . . .

Id.   But see Harbaugh v. Greslin, 365 F. Supp. 2d 1274, 1278 (S.D. Fla. 2005) (Applying Florida

---

agreement, we do not address that issue.").

6

law, the court held that a contingency "fee agreement does not substantially control a court's determination of reasonable fees to be awarded.   See Foodtown[, Inc. of Jacksonville v. Argonaut Ins. Co.], 102 F.3d [483, ]485 [(11th Cir. 1996) ]('[a] fee agreement entered into between a prevailing party and its attorneys does not substantially control a court's determination of reasonable fees to be awarded ... Rather, the fee merely establishes the maximum amount that the court can award.')[ (applying Florida law)]; Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1151 (Fla. 1985) ('because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award').   Therefore, the Court will calculate the attorneys' fee award using the lodestar method to determine if the amount is lower than the maximum allowed under the agreement.")

Nevertheless, in assessing the reasonableness of attorneys' fees, "it is generally recognized that the first yardstick that is used by the trial judges is the time consumed."   Peebles, 439 So. 2d at 141.   Buck's time itemization documents a total of 183.45 hours, with an "[a]dditional 50-100 hours anticipated in collection[,]" at a billing rate of $300/hour.[3]   (Doc. 66 at 10).   Both Ingram and Wilson state in their affidavits that they have reviewed Plaintiffs' litigation file and that a fee of $100,000, representing a one-third contingency of the amount sought pursuant to the promissory notes, is reasonable "based on [their] review of the pleadings in this case, the legal work already performed, the legal work anticipated, and [their] experience in evaluating cases of this type[.]"[4]

---

[3] Plaintiffs admit that "[t]he itemization of time has been reconstructed and the time kept was not written down contemporaneously" and characterize the itemization as "a conservative computation of the time spent in this case." (Doc. 66 at 2).

[4]      Ingram "ha[s] been licensed to practice law for over 15 years in the State of Alabama" and is "currently employed by the law firm of Ingram Law offices [sic] LLC."   Her "practice is devoted to the collection of disputed accounts."   (Doc. 66-1 at 1).
      Wilson "ha[s] been licensed to practice law for over 30 years in the state of Alabama" and is "currently employed by the law firm of Ball, Ball Mathews [sic] and Novak, PA."   His "practice involves litigation in State and Federal Courts in the state of Alabama."   (Id. at 3).

(Doc. 66-1).   In addition, Wilson avers that, "in the event that the court considers the amount of time in this case spent by Thomas Buck and his firm to handle the litigation," Buck's requested billing rate of $300/hour "is both fair and reasonable under the circumstances."   (Id. at 4). Unfortunately, neither Ingram nor Wilson states his or her familiarity with the Mobile legal market, and Plaintiffs have failed to provide evidence addressing the fundamental question of whether Buck's fee is reasonable in the Mobile market.

The Court, which is familiar with the prevailing rates in the local market, may also act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested fees.   Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Evidence indicates that Buck "has practiced in the Circuit Courts and Federal Courts in the State of Alabama for over 30 years."   (Doc. 66-1 at 4).   The Court is also mindful that this matter was litigated to a jury verdict and that an outcome in Plaintiffs' favor was uncertain due to Defendants' defense that Plaintiffs had first breached the terms of the settlement agreement giving rise to the promissory notes.   Based on the Court's consideration of the opinions of Ingram and Wilson, its own knowledge and experience, the factors enunciated in Johnson and Van Schaack, and particularly the reasoning of Peebles regarding contingency fees, the Court finds an award to Plaintiffs of $100,000 in attorney's fees and expenses to be fair and reasonable.

**III.**   **Conclusion**

Accordingly, it is **ORDERED** that Plaintiffs' "Motion for Attorney Fees and Costs" (Doc. 66) is **GRANTED**.   Plaintiffs are awarded **$100,000.00** in attorney's fees and expenses.

**DONE** and **ORDERED** this the **5**th day of **February 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

8